# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3898

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Anthony J. Smalley, | * | District of Missouri. |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: May 14, 2002

Filed: June 28, 2002

_____

Before HANSEN, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and
PRATT,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Anthony Smalley was charged with being a felon in possession of a firearm in
violation of 18 U.S.C. § 922(g)(1) and entered a plea of guilty. The United States
then filed a notice that it would seek to enhance Mr. Smalley's sentence under the

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern
District of Iowa.

Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e); the district court[2] applied that enhancement and sentenced Mr. Smalley to 15 years of incarceration. Mr. Smalley now appeals, contending that the district court erred because it imposed the enhancement based on his prior juvenile adjudications. Mr. Smalley also asserts that the government breached the terms of its plea agreement with him, and, in so doing, violated his due process rights. We affirm the district court's sentence.

I.

Under 18 U.S.C. § 924(a)(2), a defendant convicted of being a felon in possession of a firearm can be sentenced to a maximum of 10 years in prison if he or she has not been previously convicted of violent felonies or serious drug offenses. The ACCA, however, mandates a minimum sentence of 15 years for anyone convicted of being a felon in possession of a firearm if he or she has three previous convictions for a violent felony or a serious drug offense. *See* 18 U.S.C. § 924(e). The district court increased Mr. Smalley's sentence from the prescribed statutory maximum of 10 years to 15 years based, in part, on Mr. Smalley's prior juvenile adjudications.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The question before us is whether juvenile adjudications can be characterized as prior convictions as that term is used in *Apprendi*. If so, it follows that they can be used to increase the penalty for a crime beyond the prescribed statutory maximum without being submitted and proved to a jury. *See United States v. Campbell*, 270 F.3d 702, 708 (8th Cir. 2001), *cert. denied*, 122 S. Ct. 1339 (2002).

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

As an initial matter, we note that Congress characterized juvenile adjudications as "prior convictions" under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B), (e)(2)(C). But the issue of whether juvenile adjudications can be characterized as "prior convictions" for *Apprendi* purposes is a constitutional question implicating Mr. Smalley's right not to be deprived of liberty without " 'due process of law,' " *see Apprendi*, 530 U.S. at 476 (quoting U.S. Const. amend. XIV, § 1), and Congress's characterization, therefore, is not dispositive.

We have discovered only one federal case that has addressed the constitutional issue of whether juvenile adjudications can properly be characterized as prior convictions for *Apprendi* purposes. *See United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). In holding that they cannot, the *Tighe* court relied heavily on the following language in *Jones v. United States*, 526 U.S. 227, 249 (1999): "One basis for [the] possible constitutional distinctiveness [of prior convictions] is not hard to see: unlike any other consideration used to enlarge the possibility for an offense ... a prior conviction must itself have been established through procedures satisfying fair notice, reasonable doubt, and jury trial guarantees." *See Tighe*, 266 F.3d at 1193-94. It reasoned that because juveniles are not afforded the right to a jury trial, juvenile proceedings are not subject to the "fundamental triumvirate of procedural protections" that guarantee reliability and thus did not fall within the "prior conviction" exception to *Apprendi*'s general rule. *See id.* at 1193-94.

We respectfully disagree with the *Tighe* court's conclusion. The Supreme Court stated in *Apprendi* that prior convictions are excluded from the general rule because of the "certainty that procedural safeguards," such as trial by jury and proof beyond a reasonable doubt, undergird them. *Apprendi*, 530 U.S. at 488. The Court went on to state that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a

reasonable doubt," on the one hand, and accepting the validity of findings of facts by judges that are subject to a lesser standard of proof, on the other. *Id.* at 496. We think that while the Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt ), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles. In other words, we think that it is incorrect to assume that it is not only sufficient but necessary that the "fundamental triumvirate of procedural protections" support an adjudication before it can qualify for the *Apprendi* exemption.

We do not think, moreover, that *Jones* meant to define the term "prior conviction" for constitutional purposes as a conviction "that has been established through procedures satisfying fair notice, reasonable doubt and jury trial guarantees." 511 U.S. at 249. We read *Jones* instead to mean that if prior convictions result from proceedings outfitted with these safeguards, then they can constitutionally be used to increase the penalty for a crime without those convictions being submitted and proved to a jury. Our confidence in this reading is bolstered by the fact that in explaining the exception for prior convictions, the *Apprendi* court itself talks about only the right to a jury trial and proof beyond a reasonable doubt. We think it notable, moreover, that *Apprendi* does not even refer to the language, quoted above, upon which the *Tighe* court based its conclusion.

In any case, we conclude that the question of whether juvenile adjudications should be exempt from *Apprendi*'s general rule should not turn on the narrow parsing of words, but on an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption. We believe that they are.

-4-

For starters, juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination. *See In re Winship*, 397 U.S. 358, 368 (1970). A judge in a juvenile proceeding, moreover, must find guilt beyond a reasonable doubt before he or she can convict. *See id.* We think that these safeguards are more than sufficient to ensure the reliability that *Apprendi* requires. This conclusion finds at least some support in those cases, in both our circuit and the Ninth Circuit, that hold that juvenile sentences may be used to enhance a defendant's sentence within a prescribed statutory range. *See United States v. Early*, 77 F.3d 242, 244-45 (8th Cir. 1996) (*per curiam*); *United States v. Williams*, 891 F.2d 212, 214-15 (9th Cir. 1989), *cert. denied*, 494 U.S. 1037 (1990). Finally, while we recognize that a jury does not have a role in trials for juvenile offenses, we do not think that this fact undermines the reliability of such adjudications in any significant way because the Supreme Court has held that the use of a jury in the juvenile context would "not strengthen greatly, if at all, the fact-finding function" and is not constitutionally required. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 547 (1971) (plurality opinion).

We therefore conclude that juvenile adjudications can rightly be characterized as "prior convictions" for *Apprendi* purposes, and that the district court did not err in increasing Mr. Smalley's sentence based on his prior juvenile adjudications.

## II.

Mr. Smalley also argues that the government violated his due process rights by breaching its plea agreement with him. We agree, however, with the district court's conclusion that there was no plea agreement to breach. Unlike the situation in *Santobello v. New York*, 404 U.S. 257, 262 (1971), the government in this case never promised to make a specific sentencing recommendation to the court, nor did it promise, moreover, not to use subsequently discovered evidence for sentencing purposes. Even if we were to accept Mr. Smalley's assertion that there was a plea

agreement here and that the government breached it, which we do not, the Supreme Court has held that permitting a defendant to replead when the government breaches such an agreement is "within the range of constitutionally appropriate remedies." *See Mabry v. Johnson*, 467 U.S. 504, 510 n.11 (1984) (citing *Santobello*, 404 U.S. at 262-63). Mr. Smalley was given the opportunity to withdraw his guilty plea after it was brought to his attention that the government would be recommending a sentence enhancement under the ACCA, and he chose not to do so. We believe, therefore, that there was no violation of his due process rights.

We think that what occurred in this case can, at most, properly be characterized as a violation of Federal Rule of Criminal Procedure 11. Rule 11(c)(1) provides, *inter alia*, that the court must make the defendant aware of the minimum and maximum penalty provided by law before the defendant pleads guilty. The district court determined that Mr. Smalley had not been correctly informed of the penalty to which he might be subject under the ACCA, and that his first plea was therefore invalid. The district court then provided Mr. Smalley with an opportunity to withdraw his guilty plea, a remedy that is consistent with our case law. *See United States v. Commisano*, 599 F.2d 851, 855 (8th Cir. 1979). In short, Mr. Smalley was afforded the proper remedy for the unintentional violation of Rule 11.

## III.

In sum, we believe that the district court was justified in considering Mr. Smalley's juvenile adjudications in sentencing him and that Mr. Smalley's due process rights were not violated because he was afforded the opportunity to withdraw his plea. We therefore affirm the district court's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.