[No. H024392. Sixth Dist. Sept. 11, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
TRACEY DONELL LEE, Defendant and Appellant.

**COUNSEL**

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Dorian Jung, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Defendant Tracey Donnell Lee appeals after pleading guilty to two counts of possession of a firearm by a juvenile offender (Pen. Code, § 12021, subd. (e)),[1] two counts of possession of a concealed firearm (§ 12025, subd. (a)(2)), two counts of unlawful possession of ammunition (§ 12316, subd. (b)), and three counts of carrying a loaded firearm (§ 12031, subd. (a)). Defendant admitted one "strike" allegation, based on a prior juvenile adjudication. He was sentenced to a prison term of eight years eight months.

On appeal, defendant contends that his prior juvenile adjudication cannot be used as a "strike" because he did not have the right to a jury trial during the prior juvenile proceeding. We reject this claim and affirm the judgment.

---

[1] Unspecified section references are to the Penal Code.

## I. BACKGROUND

The facts underlying defendant's offenses are not relevant to the issues raised on appeal. We briefly note that defendant was originally charged with 22 counts, including various weapon possession offenses, criminal threats, assault, discharging a firearm with gross negligence, discharging a firearm at a dwelling, discharging a firearm at an unoccupied vehicle, burglary, possession of methamphetamine, and unlawful sexual intercourse with a minor. After a court trial, he was convicted of 13 counts and found not guilty of nine counts. The trial court found true two "strike" allegations—both of which pertained to prior juvenile adjudications—but dismissed one of those allegations at sentencing. Defendant received a 24-year prison term. He appealed, claiming that the trial court erred in denying his motion to represent himself. (See *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) We agreed with this claim and reversed the judgment.[2]

Upon remand, defendant entered into a plea bargain, pleading guilty to two counts of possession of a firearm by a juvenile offender (§ 12021, subd. (e)), two counts of possession of a concealed firearm (§ 12025, subd. (a)(2)), two counts of unlawful possession of ammunition (§ 12316, subd. (b)), and three counts of carrying a loaded firearm (§ 12031, subd. (a)). As part of the plea bargain, defendant admitted one of the "strike" allegations: that, as a juvenile, defendant was declared a ward of the court after the juvenile court found that he committed forcible rape (§ 261, subd. (b)).

Before sentencing, defendant moved to dismiss the "strike." He argued that his prior juvenile adjudication could not be considered a "strike" because he did not have the right to a jury trial during the prior juvenile proceeding. He also asked the trial court to dismiss the "strike" pursuant to section 1385 and *People v. Superior Court (Romero)* 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. The trial court denied defendant's motion to dismiss the "strike" allegation and sentenced him to the eight year eight month maximum prison term provided in the plea bargain. Defendant's sentence consisted of a doubled three-year term for one count of carrying a loaded firearm (§ 12031, subd. (a)) and consecutive doubled eight-month terms for the other two counts of carrying a loaded firearm. The trial court stayed the terms for the remaining offenses pursuant to section 654.

## II. DISCUSSION

Defendant contends that his prior juvenile adjudication cannot be considered a "strike" because he did not have the right to a jury trial during the

---

[2] We granted defendant's request for judicial notice of his prior appeal, case No. H020589.

prior juvenile proceeding. He claims he did not waive this claim by admitting the "strike" allegation because he raised the issue in his motion to dismiss. He argues that if his admission is construed as a waiver, he received ineffective assistance of counsel. We believe that defendant's motion to dismiss preserved the issue for appeal.

Section 667, subdivision (d) defines what constitutes a prior felony conviction for purposes of the "Three Strikes" law. That subdivision states in pertinent part: "(3) A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if: [¶] (A) The juvenile was 16 years of age or older at the time he or she committed the prior offense. [¶] (B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) or (2) as a felony. [¶] (C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law. [¶] (D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (See also § 1170.12, subd. (b)(3).)

Defendant does not dispute that his prior juvenile adjudication meets each element of section 667, subdivision (d)(3). Rather, he contests the constitutionality of this provision of the three strikes law, claiming that his juvenile adjudication cannot be used as a "strike" because he did not have the right to a jury trial during the juvenile proceeding.

This claim was rejected in *People v. Fowler* (1999) 72 Cal.App.4th 581 [84 Cal.Rptr.2d 874] (*Fowler*). The *Fowler* court explained: "By enacting the three strikes law, the Legislature has not transformed juvenile adjudications into criminal convictions; it simply has said that, under specified circumstances, a prior juvenile adjudication may be used as evidence of past criminal conduct for the purpose of increasing an adult defendant's sentence. The three strikes law's use of juvenile adjudications affects only the length of the sentence imposed on an adult offender, not the finding of guilt in the adult court nor the adjudication process in the juvenile court. Since a juvenile constitutionally—and reliably [citation]—can be adjudicated a delinquent without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction." (*Id.* at p. 586, fn. omitted.)

After the *Fowler* case was decided, the United States Supreme Court decided *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), which considered the constitutionality of New Jersey's "hate crime" law. That law provided for "an 'extended term' of

imprisonment if the trial judge finds, by a preponderance of the evidence, that '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' [Citation.]" (*Id.* at pp. 468–469.) The court concluded the statute was unconstitutional, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) In reaching its holding, the court explained that prior convictions were exempt from the rule because of the "procedural safeguards attached to any 'fact' of prior conviction." (*Id.* at p. 488.)

After *Apprendi*, the Ninth Circuit Court of Appeals decided *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 (*Tighe*), a case upon which defendant relies heavily. The *Tighe* court considered whether the defendant's prior juvenile adjudication could constitutionally qualify as a prior conviction under 18 U.S.C. § 924(e), a federal sentencing statute for repeat offenders which did not provide for the right to have a jury find the prior conviction beyond a reasonable doubt. In *Tighe*, a two-to-one decision, the majority stated that "[a]t first blush, it may appear that [a] juvenile adjudication, which Congress has characterized as a 'prior conviction' for the purposes of [the federal statute], falls precisely within *Apprendi's* exception for 'the fact of a prior conviction' .... Such an analysis, however, ignores the significant constitutional differences between adult convictions and juvenile adjudications." (*Tighe, supra,* 266 F.3d at pp. 1192–1193.) The *Tighe* majority noted that in *Jones v. United States* (1999) 526 U.S. 227, 249 [143 L.Ed.2d 311, 119 S.Ct. 1215], the Supreme Court had stated: "unlike virtually any other consideration used to enlarge the possible penalty for an offense, ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." The *Tighe* majority referred to *Jones* as stating a "fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions" and likewise read the *Apprendi* opinion as "identify[ing] the right to a jury trial as one of the requisite procedural safeguards" necessary for a prior conviction to be exempt from its rule. (*Tighe, supra,* 266 F.3d at pp. 1193, 1194.) *Tighe* therefore held that "the 'prior conviction' exception to *Apprendi's* general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi's* 'prior conviction' exception." (*Ibid.*, fn. omitted.)

The reasoning of the *Tighe* majority was rejected in *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030 (*Smalley*), which also considered whether a prior juvenile adjudication could constitutionally qualify as a prior conviction

under the federal sentencing statute. Unlike the *Tighe* court, the *Smalley* court did not read *Apprendi* as holding that the right to a jury trial was one of the essential "procedural safeguards" permitting prior convictions to be exempt from its rule requiring a jury finding beyond a reasonable doubt on facts increasing the punishment for crimes. (*Apprendi, supra,* 530 U.S. at p. 488.) The *Smalley* court explained: "We think that while the Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." (*Smalley, supra,* 294 F.3d at p. 1032.) The *Smalley* court ultimately concluded that "juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." (*Ibid.*) The court reasoned: "For starters, juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination. [Citation.] A judge in a juvenile proceeding, moreover, must find guilt beyond a reasonable doubt before he or she can convict. [Citation.] We think that these safeguards are more than sufficient to ensure the reliability that *Apprendi* requires." (*Ibid.*)

The court in *U.S. v. Jones* (3d Cir. 2003) 332 F.3d 688 also rejected the reasoning of *Tighe*. That court stated: "Like the *Smalley* court, we find nothing in *Apprendi* or *Jones* [*v. United States, supra,* 526 U.S. 227] … that requires us to hold that prior nonjury juvenile adjudications that afforded all required due process safeguards cannot be used to enhance a sentence …. [¶] … A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes." (*U.S. v. Jones, supra,* 332 F.3d at p. 696.)

The court in *People v. Bowden* (2002) 102 Cal.App.4th 387 [125 Cal.Rptr.2d 513] (*Bowden*) considered an argument basically identical to the one defendant presents. That court distinguished both *Apprendi* and *Tighe*: "In both of those cases the fact that increased the defendant's sentence above the statutory maximum was not tried or proved by the usual criminal standards *in the trial of the current case,* but was a factual finding solely by a sentencing judge ostensibly as a sentencing consideration. This is not at all like proof of a strike under California's Three Strikes law. ▮ Under the Three Strikes law a qualifying prior conviction must, *in the current case,* be pleaded and proved [citation], beyond a reasonable doubt [citations], and the defendant has a statutory right to a jury trial, at least on the issue whether the defendant suffered the prior conviction [citations]. Because the context is so different, *Apprendi* and *Tighe* do not apply here." (*Bowden, supra,* 102 Cal.App.4th at pp. 392–393, fn. omitted, original italics; see also *People v. Smith* (2003) 110 Cal.App.4th 1072, 1075–1077 [1 Cal.Rptr.3d 901].)

The *Bowden* court went further and, like the *Smalley* and *Jones* courts, disagreed with the reasoning of the *Tighe* majority. The *Bowden* court instead agreed with the *Tighe* dissent that *Jones v. United States, supra,* 526 U.S. 227 "does not support" the majority's "broad conclusion." (*Bowden, supra,* 102 Cal.App.4th at p. 393.) The *Bowden* court quoted from the dissenting justice in *Tighe:* " 'In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no constitutional problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement.' [Citation.]" (*Id.* at pp. 393–394, quoting *Tighe, supra,* 266 F.3d at p. 1200 (dis. opn. of Brunetti, J.).)

We join the *Bowden* court in distinguishing and disagreeing with the *Tighe* majority. First, as the *Bowden* court recognized, California's Three Strikes law requires that a prior conviction (including a prior juvenile adjudication) be proved beyond a reasonable doubt, and it provides for the right to a jury trial on the question whether a defendant has suffered a prior conviction. (See also *People v. Smith, supra,* 110 Cal.App.4th at p. 1079.) The federal law considered in *Tighe* did not provide such procedural safeguards. In fact, the *Tighe* majority recognized this distinction, pointing out that "several states' recidivism statutes treat prior convictions as elements of a crime or provide for a jury determination of the fact of a prior conviction." (*Tighe, supra,* 266 F.3d at p. 1192, fn. 3.) Moreover, we agree that the procedural safeguards provided in juvenile adjudications are sufficient to satisfy the concerns of the Supreme Court in *Apprendi.* ■ A juvenile has the right to notice of the charges against him or her, the right to counsel, the privilege against self-incrimination, the right to confrontation and cross-examination, the protection against double jeopardy, and the allegation must be proved beyond a reasonable doubt. (See *Fowler, supra,* 72 Cal.App.4th at p. 585.)

■ For the reasons stated, we reject defendant's claim that his prior juvenile adjudication could not be used as a "strike."

## III. DISPOSITION

The judgment is affirmed.

Premo, J., concurred.

**PREMO, J.**—I concur. A juvenile court adjudication does not offend *Apprendi* and *Jones*.[1] "The California Supreme Court has succinctly explained *Apprendi* in the following terms: 'This is what *Apprendi* teaches us: Except for sentence enhancement provisions that are based on a defendant's prior conviction, the federal Constitution requires a jury to find, beyond a reasonable doubt, the existence of every element of a sentence enhancement that increases the penalty for a crime beyond the "prescribed statutory maximum" punishment for that crime. [Citation.]' [Citation.]" (*People v. Smith* (2003) 110 Cal.App.4th 1072, 1076 [1 Cal.Rptr.3d 901].) *Jones*, which preceded *Apprendi*, stated: "One basis for that possible constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense … a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (*Jones, supra*, 526 U.S. at p. 249.) "Thus, *Jones'* recognition of prior convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial." (*U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187, 1193.)

In this state, the right to a jury trial is guaranteed by both the federal and state Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, §§ 16, 29.) However, juveniles do not have this right. (*In re Daedler* (1924) 194 Cal. 320 [228 P. 467].)[2] "[A]s Justice Kennard explained in her dissenting opinion in *Manduley v. Superior* Court (2002) 27 Cal.4th 537 [117 Cal.Rptr.2d 168, 41 P.3d 3] … 'The juvenile court system and the adult criminal courts serve fundamentally different goals. The punishment for serious crimes tried in the criminal courts is imprisonment, and "the purpose of imprisonment for crime is punishment." [Citation.] California Rules of Court, rule 4.410[,] identifies seven objectives in sentencing a criminal defendant. They include punishment, deterrence, isolation, restitution, and uniformity in sentencing, but they do not include goals important in the treatment of juvenile offenders such as maturation, rehabilitation, or preservation of the family ….' " (*People v. Smith, supra*, 110 Cal.App.4th at p. 1080.) As most recently stated by the Legislature, offending juveniles are brought into the juvenile court system "to provide for the protection and safety of the public and each minor under the

---

[1] *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*); *Jones v. United States* (1999) 526 U.S. 227 [143 L.Ed.2d 311, 119 S.Ct. 1215] (*Jones*).

[2] This holding has been criticized as based on a "mistaken interpretation of historical fact" (*In re Javier A.* (1984) 159 Cal.App.3d 913 [954, 206 Cal.Rptr. 386]) and on a rationale that "has eroded completely away." (*People v. Smith, supra*, 110 Cal.App.4th at p. 1085 (dis. opn., Johnson, J.).)

jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. When removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents ...." (Welf. & Inst. Code, § 202, subd. (a).) Given the desire of the Legislature to maintain the relative informality of the juvenile court and still provide *parens patriae* influence in seeking the rehabilitation and protection of the minors under its jurisdiction, the separation of the juvenile and adult courts still has a practical purpose.

It is noteworthy that "the Constitution does not mandate elimination of all differences in the treatment of juveniles." (*Schall v. Martin* (1984) 467 U.S. 253, 263 [81 L.Ed.2d 207, 104 S.Ct. 2403].) Although on a petition to have a minor declared a ward of the juvenile court minors are as entitled as adults to notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination, double jeopardy, and proof beyond a reasonable doubt (*McKeiver v. Pennsylvania* (1971) 403 U.S. 528, 543 [29 L.Ed.2d 647, 91 S.Ct. 1976] *(McKeiver)*; *People v. Fowler* (1999) 72 Cal.App.4th 581, 585 [84 Cal.Rptr.2d 874]), for the factfinding function, juveniles are entitled to a trial by a superior court judge. (Welf. & Inst. Code, § 601 et seq.) The majority of juvenile court decisions in this state are still rendered by dedicated and experienced jurists, assisted in the crucible of truth-finding by able prosecutors and defense counsel and their supporting staffs. The juvenile court's role as *parens patriae* is fulfilled if at all stages of the proceedings, the juvenile court assures the minor of his or her statutory rights and follows statutory procedures in conducting the hearing. (*In re Corey* (1964) 230 Cal.App.2d 813, 831 [41 Cal.Rptr. 379].)

The United States Supreme Court has recognized the fairness of such proceedings. It stated: "We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury." (*Duncan v. Louisiana* (1968) 391 U.S. 145, 158 [20 L.Ed.2d 491, 88 S.Ct. 1444].) "[A] juvenile constitutionally—and reliably [citation]— can be adjudicated a delinquent without being afforded a jury trial ...." (*People v. Fowler, supra*, 72 Cal.App.4th at p. 586, citing *McKeiver, supra*, 403 U.S. at p. 547.) The California Constitution recognizes the reliability of juryless trials by providing, in the same section that guarantees the right to a jury trial, the right to waive a jury trial. "Trial by jury is an inviolate right and shall be secured to all, ... A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the

defendant and the defendant's counsel. In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." (Cal. Const., art. I., § 16.) If juryless trials were so unreliable that adults could not choose to waive a jury, then juveniles would be entitled to the same protections. However, since juryless trials are authorized by the state Constitution and their fairness has been acknowledged by the United States Supreme Court (*Duncan, supra*, 391 U.S. at p. 158), I am satisfied that juvenile adjudications are reliable enough to be used as strikes under the "Three Strikes" law. If sentence enhancement by a nonjury juvenile court adjudication really offended *Apprendi* and *Jones*, nonjury adult court adjudications would be suspect as well.

**RUSHING, P. J.**—I respectfully dissent. Because the defendant did not have the right to a trial by jury in the juvenile court proceeding, I would find that the use of defendant's prior juvenile adjudication to increase defendant's sentence under the "Three Strikes" law violates the United States Supreme Court decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348].

An examination of *Apprendi v. New Jersey, supra,* 530 U.S. 466, and related Supreme Court decisions supports this result. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The "narrow" prior conviction exception stems from the view that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." (*Id.* at pp. 490, 496.)

In reaching its result, *Apprendi* distinguished *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219], where the United States Supreme Court upheld a federal law allowing a judge to enhance a defendant's sentence based upon prior convictions not alleged in the indictment. The *Almendarez-Torres* defendant "*admitted* the three earlier convictions for aggravated felonies—all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own—no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 488.) Recognizing this difference, the United States Supreme Court in *Apprendi* explained, "Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise

implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum statutory range." (*Ibid.*, fn. omitted.)

These procedural safeguard concerns were also raised in *Jones v. United States* (1999) 526 U.S. 227 [143 L.Ed.2d 311, 119 S.Ct. 1215], where the Supreme Court emphasized that the fact of a prior conviction was constitutionally distinct from other sentence enhancing facts, so that it was permissible to use prior convictions to increase the penalty for an offense without treating them as an element of the current offense: "One basis for that possible constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (*Id.* at p. 249.)

Drawing on the *Apprendi*, *Almendarez-Torres* and *Jones* decisions, the Ninth Circuit Court of Appeals in *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 recently held that a defendant's prior conviction can be used to enhance a defendant's sentence only if the defendant had a right to a jury trial in the proceeding where he was found guilty of the earlier offense. According to *Tighe*, prior juvenile adjudications may not be used to enhance a defendant's sentence because the juvenile proceedings did not afford the defendant the right to a jury trial. (*Id.* at pp. 1193–1195.) For these reasons, the court reversed the defendant's sentence under the Armed Career Criminal Act, which mandated a minimum 15-year sentence for a defendant with three prior violent or serious drug convictions and who is later found guilty of possessing a firearm. The Ninth Circuit reversed because one of the defendant's three priors was a juvenile adjudication in which the defendant had no right to a jury trial. (*Id.* at pp. 1194–1195.)

*Tighe* observed that "the 'prior conviction' exception to *Apprendi*'s general rule must be limited to prior convictions that *were themselves* obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi*'s 'prior conviction' exception." (*U.S. v. Tighe, supra*, 266 F.3d at p. 1194, fn. omitted, italics added.)

I agree with the reasoning in *Tighe* and therefore conclude that defendant's prior juvenile adjudication cannot be used to increase his sentence under the Three Strikes law because defendant did not have the right to a jury trial in the juvenile proceeding.

In holding to the contrary, the majority emphasizes that California's Three Strikes law requires that a prior conviction, including a prior juvenile

adjudication, be proved beyond a reasonable doubt, and it provides for the right to a jury trial on the question of whether the defendant suffered a prior conviction. But the right to a jury trial on the question of whether a defendant *suffered a prior conviction* is far different from the right to a jury trial in determining whether the defendant *actually committed the underlying conduct*. It is the latter determination that was the focus of the *Tighe* court, and it is the fact that an adult criminal defendant is found guilty in a proceeding where the defendant had a right to jury trial that imbues an adult prior conviction with constitutional distinctiveness. The same cannot be said of a juvenile proceeding. That a jury may determine whether a defendant has previously been found by a *juvenile court judge* to have committed the conduct resulting in the prior juvenile adjudication does nothing to alleviate the concerns expressed in *Tighe*. It does not make the prior juvenile adjudication constitutionally distinctive. The basic premise of *Tighe* is that the trial court may not impose a sentence greater than the statutory maximum for a current offense unless the defendant had the right to trial by jury in the proceedings underlying his prior conviction. By suggesting that *Tighe* only requires that there be a right to a jury trial on the truth of the fact of the prior juvenile adjudication, the majority seriously misconstrues *Tighe* and the premise upon which it is based.

Recently, the Harvard Law Review analyzed *Tighe* and the Eight Circuit's decision in *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030, in which the court of appeals approved the use of a defendant's prior juvenile adjudications as "prior convictions" under the Armed Career Criminal Act of 1994. The author concluded, "Whereas *Tighe* quotes *Jones* and *Apprendi* at length and uses categorical language that echoes their themes, *Smalley* cites these precedents in large part to distinguish their discussion of the jury trial right from its own conclusions. Compared with the approach of *Smalley*, therefore, *Tighe's* understanding of the jury trial right is more consistent with the implications of the Supreme Court's recent jury trial jurisprudence." (Note, *Constitutional Law—Right to Jury Trial—Eighth Circuit Holds an Adjudication of Juvenile Delinquency To Be a "Prior Conviction" for the Purpose of Sentence Enhancement at a Subsequent Criminal Proceeding* (2002) 116 Harv. L.Rev. 705, 708, fns. omitted.)

The critical differences between juvenile and criminal court proceedings support the view that a prior juvenile adjudication should not be used to increase a defendant's sentence beyond the statutory maximum. Over 30 years ago, the United States Supreme Court interpreted the United States Constitution to allow states to deny juveniles the right to a jury trial in juvenile proceedings. (*McKeiver v. Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976].) However, the *McKeiver* decision was based upon certain beliefs about the juvenile justice system—beliefs that hold less sway today given the current realities of the juvenile justice system. (Note,

*Constitutional Law—Right to Jury Trial—Eighth Circuit Holds an Adjudication of Juvenile Delinquency To Be a "Prior Conviction" for the Purpose of Sentence Enhancement at a Subsequent Criminal Proceeding, supra,* 116 Harv. L.Rev. at p. 708.)

For example, Justice White's concurring opinion in *McKeiver* emphasizes that "reprehensible acts by juveniles are not deemed the consequence of mature and malevolent choice but of environmental pressures (or lack of them) or of other forces beyond their control. Hence the legislative judgment not to stigmatize the juvenile delinquent by branding him a criminal; his conduct is not deemed so blameworthy that punishment is required to deter him or others. Coercive measures, where employed, are considered neither retribution nor punishment. Supervision or confinement is aimed at rehabilitation, not at convincing the juvenile of his error simply by imposing pains and penalties.... Against this background and in light of the distinctive purpose of requiring juries in criminal cases, I am satisfied with the Court's holding." (*McKeiver v. Pennsylvania, supra,* 403 U.S. at pp. 551–552 (conc. opn. of White, J.).) As the author of the Harvard note stated, "Whether or not there was a great practical distinction—beyond the procedural protections issue—between the criminal and juvenile justice system of 1971, the systems have since converged to the point that *McKeiver's* idealistic conception of the juvenile justice system is hard to sustain." (Note, *Constitutional Law—Right to Jury Trial—Eighth Circuit Holds an Adjudication of Juvenile Delinquency To Be a "Prior Conviction" for the Purpose of Sentence Enhancement at a Subsequent Criminal Proceeding, supra,* 116 Harv. L.Rev. at p. 711.) Moreover, *McKeiver's* belief about the preference for judicial fact finding in juvenile adjudications seems at odds with the United States Supreme Court's recent statement that "The Sixth Amendment jury trial right, however, does not turn on the relative rationality, fairness, or efficiency of potential factfinders." (*Ring v. Arizona* (2002) 536 U.S. 584, 607 [153 L.Ed.2d 556, 122 S.Ct. 2428].)

When *McKeiver's* dated and idealistic view of the juvenile justice system is balanced against United States Supreme Court's recent cases emphasizing the importance of the right to a jury trial in circumstances where a fact increases the penalty for a crime beyond the statutory maximum, I believe the correct conclusion is that a juvenile adjudication, occurring as it does without the right to trial by jury, cannot be used to increase a defendant's sentence under California's Three Strikes law.

Finally, I am not persuaded by the majority's view that *Apprendi* is satisfied by other procedural safeguards provided in juvenile adjudications. Nothing in *Apprendi* suggests that the denial of the right to a jury determination can be offset by the existence of other procedural protections.

"The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to a jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions of the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." (*Duncan v. Louisiana* (1968) 391 U.S. 145, 155–156 [20 L.Ed.2d 491, 88 S.Ct. 1444], fn. omitted.)

For these reasons, I would hold that defendant's prior juvenile adjudication cannot be used to increase his sentence under the Three Strikes law.

Appellant's petition for review by the Supreme Court was denied December 10, 2003. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.