[Cite as *State v. Hand*, 2014-Ohio-3838.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25840 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-650/2 |
| v. | : | |
| | : | |
| ADRIAN L. HAND, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of September, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, 120 West Second Street, Suite 706, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}   Adrian L. Hand appeals from his conviction and sentence on charges of aggravated burglary, aggravated robbery, felonious assault, and a firearm specification.[1]

{¶ 2}    In his sole assignment of error, Hand contends the trial court's use of a prior juvenile delinquency adjudication to enhance his sentence from a non-mandatory to a mandatory prison term violated his due process rights and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

{¶ 3}    The record reflects that before his current offenses, Hand had a delinquency adjudication for aggravated robbery, a first-degree felony if committed by an adult. In the proceedings below, the trial court imposed an aggregate six-year prison sentence for Hand's current offenses. The sentence consisted of (1) concurrent three-year terms for aggravated burglary, aggravated robbery, and felonious assault and (2) a consecutive three-year term for the firearm specification. The parties agreed that the sentence for the firearm specification involved mandatory prison time. They disputed, however, whether the trial court was required to impose mandatory prison time for the substantive offenses. The trial court relied on R.C. 2929.13(F)(6) to find that those three years involved mandatory prison time as well.

{¶ 4}    In relevant part, R.C. 2929.13(F)(6) requires a mandatory prison term where a defendant sentenced for the offenses at issue here has a prior conviction for any first or second-degree felony. The trial court concluded that Hand's delinquency adjudication qualified as a prior conviction for a first-degree felony. In so doing, it looked to R.C. 2901.08(A). As pertinent here, that statute provides:

>    If a person is alleged to have committed an offense and if the person
>
>    previously has been adjudicated a delinquent child * * * for a violation of a law or

---

[1]Hand also was found guilty of kidnapping, a second count of felonious assault, and additional firearm specifications. The trial court merged these offenses into the others at sentencing as allied offenses of similar import.

ordinance, * * * the adjudication as a delinquent child * * * is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person relative to the conviction or guilty plea.

R.C. 2901.08(A).

{¶ 5} On appeal, Hand argues that treating his delinquency adjudication as a prior conviction violates his due process rights because he was not afforded a jury trial in juvenile court and was not advised of the collateral consequences of accepting responsibility there. Relying on *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), he also argues that treating his juvenile adjudication as a prior conviction violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In his appellate brief, Hand acknowledges that the weight of authority is against him. He stresses that he is raising the issue "in order to argue for a change in existing law and to preserve the issue for himself in the future." (Appellant's brief at 4).

{¶ 6} Upon review, we are unpersuaded by Hand's arguments. This court explicitly rejected the same arguments in *State v. Craver*, 2d Dist. Montgomery No. 25804, 2014-Ohio-3635. Relying on *State v. Parker*, 8th Dist. Cuyahoga No. 97841, 2012-Ohio-4741, and cases cited therein, we rejected a claim that treating a delinquency adjudication as a prior conviction violates due process because the defendant was not afforded a jury trial in juvenile court and was not advised of the collateral consequences of accepting responsibility. *Craver* at ¶ 7-16. We also held that a prior delinquency adjudication falls within *Apprendi's* prior-conviction exception despite the fact that such an adjudication does not involve a jury trial and does not

require an explanation of all possible collateral consequences. *Id.* at ¶ 9-14. Finally, we noted our review of a juvenile-court transcript in *Craver* and found substantial compliance with Juv.R. 29(D).

**{¶ 7}** Based on the authority of *Craver* and the cases cited therein, we hold that treating Hand's delinquency adjudication as a prior conviction for purposes of imposing a mandatory prison sentence under R.C. 2929.13(F)(6) did not violate his due process rights or *Apprendi*.[2] Accordingly, Hand's assignment of error is overruled.

**{¶ 8}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissenting:

**{¶ 9}** I disagree. The majority cites to *Craver* in finding no Due Process violation by use of a prior juvenile adjudication to enhance a sentence from a non-mandatory to a mandatory prison term. *Craver* was decided on an *Anders* brief, hence the argument was never fully developed by appointment of new counsel to file a merit brief. In my view, it was patently wrong to characterize this Due Process argument as wholly frivolous.

**{¶ 10}** There is a split of authority regarding whether juvenile adjudications may be utilized as sentence enhancements in criminal cases in light of the United States Supreme Court's ruling in *Apprendi* and its progeny. Compare *Tighe* (holding the use of juvenile adjudications without right to jury trial violates due process of law under *Apprendi), and State v. Brown,* 879

---

[2] Unlike *Craver*, we have not reviewed a transcript of Hand's juvenile court proceeding because no such transcript is part of the record on appeal.

So.2d 1276, 1290 (La. 2004) (same), with *United States v. Burge*, 407 F.3d 1183, 1191 (11th Cir. 2005); *United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003); and *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002).

{¶ 11}    Each of the above cited cases were decided before *Allenye v. United States*, ___ U.S. _____,133 S.Ct. 2151, 186 L.Ed. 314 (2013), wherein Justice Thomas reiterated statements he made in *Apprendi*, observing that the logic of *Apprendi* applies with equal weight to facts triggering a mandatory minimum sentence.   There are a significant number of law review articles which question on due process grounds  whether juvenile court adjudications should be considered the equivalent of criminal convictions for purposes of sentence enhancement statutes.   Generally, the critics note: (1) the different purposes of a juvenile adjudication and the juvenile justice system as a whole, (2) the prevalence of pleas in the juvenile system, (3) the lack of a jury trial in juvenile proceedings, (4) the difficulty juveniles face to meaningfully participate in a process they do not fully understand and do not control, and (5) the lack of zealous advocacy in juvenile proceedings.   *See, e.g.,* Courtney P. Fain, Note, *What's in a Name?  The Worrisome Interchange of Juvenile "Adjudications" with Criminal "Convictions,"* 49 B.C. L. Rev. 495 (2008); Alissa Malzmann, Note, *Juvenile Strikes: Unconstitutional Under Apprendi and Blakely and Incompatible with the Rehabilitative Ideal*, 15 S. Cal. Rev. L. & Women's Stud. 171 (2005); Brian P. Thill, Comment, *Prior "Convictions" Under Apprendi: Why Juvenile Adjudications May Not be Used to Increase an Offender's Sentence Exposure if They Have Not First Been Proven to a Jury Beyond a Reasonable Doubt*, 87 Marq. L. Rev. 573 (2004); Barry C. Feld, *The Constitutional Tension Between Apprendi and McKeiver: Sentence Enhancements Based on Delinquency Convictions and the Quality of Justice in Juvenile Courts,*

38 Wake Forest L. Rev. 1111 (2003).

{¶ 12} It is inconsistent to consider juvenile adjudications civil for one purpose, i.e., no right to jury trial, but then criminal for the purpose of classifying them as "prior convictions" which can be counted as predicate offenses for the purpose of a mandatory prison term upon a first adult conviction. There is a significant difference between allowing a trial judge to consider a juvenile adjudication as a factor in exercising its discretion at sentencing and using that adjudication to impose a mandatory prison term.[3]

{¶ 13} A historical perspective is warranted before rejecting the Due Process argument. The first juvenile court system was established in Illinois, in 1899, with the aim to rehabilitate those young offenders deemed less culpable than their adult counterparts. Andrew Tunnard, *Not-So-Sweet Sixteen: When Minor Convictions Have Major Consequences Under Career Offender Guidelines*, 66 Vand. L. Rev. 1309, 1312 (2013) ; Laureen D'Ambra, *A Legal Response to Juvenile Crime: Why Waiver of Juvenile Offenders is Not a Panacea,* 2 Roger Williams U.L.Rev. 277, 280 (1997).

{¶ 14} Until the early nineteenth century, American criminal courts punished juveniles and adults in much the same way, and it was not until the Progressive era that the idea of juvenile courts gained traction. Barry C. Feld, *Cases and Materials on Juvenile Justice Administration,* 2 (3d Ed. 2009). Changes in the ideological assumptions about crime and the social landscape supported the movement, that rehabilitation for juvenile offenders was needed. *Id*. at 3.

---

[3] Absent a jury trial guarantee, counting juvenile adjudications as convictions falling within the "conviction exception" of *Apprendi* and its progeny violates the constitutionally guaranteed due process rights of Hand. *See generally*, Rebecca Gannon, Note, *Apprendi after Miller and Graham, How the Supreme Court's Recent Jurisprudence on Juveniles Prohibits the Use of Juvenile Adjudications as Mandatory "Sentencing Enhancements",* 79 Brooklyn Law Review 347 (2013).

Additionally, new thoughts about social development designated adolescence as a distinct stage before adulthood, leading to the increasingly accepted view that children were less culpable and needed preparation for life. *Id*. at 4.

{¶ 15} The United States Supreme Court recognized this in the 1960s: "From the inception of the juvenile court system, wide differences have been tolerated - indeed insisted upon - between the procedural rights accorded to adults and those of juveniles. In practically all jurisdictions, there are rights granted to adults which are withheld from juveniles." *In re Gault*, 387 U.S. 1, 14, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967).

{¶ 16} From the beginning juvenile proceedings were not considered adversarial; the state acted as parens patriae for the juveniles. The state would attempt, "not so much to punish as to reform, not to degrade but to uplift, not to crush but to develop." Julian W. Mack, *The Juvenile Court*, 23 Harv.L.Rev. 104, 107 (1909). The courts deemed a juvenile offender as a "delinquent," not a "criminal," preserving the possibility of rehabilitation and signifying a lower degree of culpability. *In re Gault* at 23. The US Supreme Court considers adult criminal cases and juvenile hearings as "fundamentally different." *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

{¶ 17} Ohio has followed this reasoning in the construction of its juvenile justice system. In Ohio, juvenile proceedings do not result in criminal convictions; juvenile court proceedings are civil actions. *In re Anderson*, 92 Ohio St.3d 63, 748 N.E.2d 67 (2001), syllabus. Juveniles are "adjudicated delinquent" rather than "found guilty." *State v. Hanning,* 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000); *State v. Adkins*, 129 Ohio St. 3d 287, 2011-Ohio-3141, 951 N.E.2d 766, ¶ 10. We must recognize the concept of lessened culpability which attaches to

the admission of responsibility in juvenile court.

{¶ 18}   The Ohio Supreme Court in *Anderson* set forth the underlying criminal characteristics that are prevalent in juvenile proceedings:

Although the juvenile court operates in a separate system, the United States Supreme Court has carefully imposed basic due process requirements on it. We recognize that there are criminal aspects to juvenile court proceedings. For instance, in [*Gault*] the court specifically held the privilege against self-incrimination applicable to juvenile proceedings. *Id.* at 49-54, * * * . In addition, notice of the charges, the assistance of counsel, and the rights of confrontation and cross-examination were also afforded to the juvenile. *Id.* at 31-57, * * * . In *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the court further advanced due process rights when it found that the state must prove its case against a juvenile beyond a reasonable doubt. However, in *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, and *Schall v. Martin* (1984), 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207, the court declined further expansions when it denied juveniles the right to jury trials (*McKeiver*) and upheld the constitutionality of pretrial preventive detention for accused juvenile delinquents (*Schall*).

*Id*. at 65-66.

{¶ 19}   The Court in *Anderson* reasoned further regarding the main goal of the juvenile justice system:

In *In re Caldwell* (1996), 76 Ohio St.3d 156, 157, 666 N.E.2d 1367, 1368,

we summarized the purpose of R.C. 2151.01: "to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children. Punishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation."[] See, also, Juv.R. 1(B)(3) and (4).

Thus, from their inception, juvenile courts existed as civil, not criminal, courts. The basic therapeutic mission of these courts continues to this day. * * *.

*Id*. at 66.

{¶ 20}    An adjudication is further distinguishable from a criminal conviction because juveniles are much more likely to admit responsibility.   As noted in a 2010 law review article:

[J]uveniles may plead guilty when they otherwise would not have out of a fear that their judge--who is often remarkably familiar with the minor and particularly knowledgeable of the facts surrounding the conduct in question--will find them guilty regardless and impose a harsher sanction in response to their unwillingness to plead initially.

Joseph I. Goldstein-Breyer, *Calling Strikes Before He Stepped to the Plate: Why Juvenile Adjudications Should Not Be Used to Enhance Subsequent Adult Sentences*, 15 Berkeley J. Crim. L. 65, 79 (2010).

{¶ 21}    In juvenile courts it has been widely accepted that when a judge offers a juvenile the choice between admitting to an offense,   and going home that day, or waiting another week

in detention, evidence shows the juvenile will choose to go home as quickly as possible. *Id.*;  *See* Brief of Pac. Juvenile Defender Ctr., et al. as Amici Curiae on Behalf of Appellant Nguyen, 34, *People v. Nguyen*, 46 Cal. 4th 1007 (No. S154847) (2009).

{¶ 22}    Furthermore, authorities have cited additional differences such as the functions of lawyers in juvenile proceeding. It has been stated that lawyers who represent juveniles act more as guardians than advocates which would be found in adult criminal proceedings. *See*, Janet E. Ainsworth, *Youth Justice in a Unified Court: Response to Critics of Juvenile Court Abolition*, 36 B.C. L. Rev. 927, 940-41 (1995); Ellen Marrus, *Best Interests Equals Zealous Advocacy: A Not So Radical View of Holistic Representation for Children Accused of Crime*, 62 Md. L. Rev. 288, 327-28 (2003) (arguing that attorneys may have a paternalistic approach in juvenile cases and view the juvenile system as more similar to a benevolent social welfare agency). It seems that some attorneys can be dissuaded from advocating aggressively on behalf of the minor in juvenile court.[4]   Goldstein-Breyer, at 80. Juvenile proceedings can also be less reliable as a result of the different rules of evidence and criminal procedure, as well as a lack of a clear record or transcript. *Id.*

{¶ 23}    Although juvenile offenders are afforded some of the same due process rights as their adult counterparts, the purposes of a criminal conviction and juvenile adjudication are inherently different. The purpose of juvenile adjudications is care and rehabilitation, which hopefully will not lead the juvenile delinquent to recidivate as an adult.

{¶ 24}    I recognize that the majority of jurisdictions in the U.S. allow prior juvenile

---

[4] *See*, Steven A. Drizin & Greg Luloff, *Are Juvenile Courts A Breeding Ground for Wrongful Convictions?*,   34 N. Ky. L. Rev. 257, 305 (2007).

adjudications to be used as sentencing considerations.  *See*, Ellen Marrus, *"That Isn't Fair, Judge": The Costs of Using Prior Juvenile Delinquency Adjudications in Criminal Court Sentencing*, 40 Hous. L. Rev. 1323, 1344 (2004).   However, the adjudications in such cases are not used to enhance the defendant's sentence (or as a predicate to mandatory prison), but they can be used by the judge to determine the actual sentence within the boundaries set by the legislature.  Nevertheless, the court still retains jurisdiction to consider the adult offender's youthfulness at the time of the juvenile adjudication and to exercise its judicial discretion to consider other options such as community control and community based correctional facilities.

{¶ 25}    In Ohio, the judge uses many factors in sentencing. R.C. 2929.12. Among these, R.C. 2929.12(D)(2) provides, "[t]he offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions."   This section should be read in pari materia with R.C. 2901.08, to conclude that a juvenile adjudication should only be considered a sentencing factor in a situation such as Hand's, unlike the case where the prior adjudication does determine the level of the offense, for example a domestic violence or OMVI offense. A single juvenile adjudication should not be used to morph an adult conviction into a mandatory prison term with no consideration of community control, judicial release, or other transitional control options.

{¶ 26}  The trial court herein relied in part upon *State v. Adkins*, 129 Ohio St.3d 287, 2011-Ohio-3141, 951 N.E.2d 766, wherein the Ohio Supreme Court held that a juvenile adjudication could serve as one of the five prior similar offenses necessary to enhance a charge of operating a motor vehicle while under the influence of alcohol, because R.C. 2901.08 expressly

includes juvenile adjudications among the offenses that may be used for penalty enhancement. The court specifically noted that "R.C. 2901.08 did not change [the] juvenile adjudication; it merely added another type of legal violation as an aggravating offense under R.C. 4511.19(G)(1)(d)." *Id.* at ¶ 17. However, the *Adkins* case did not consider the Due Process implication of the lack of a right to a jury trial in juvenile court. Further, in *Adkins*, the defendant was put on notice of the aggravating circumstance of a prior juvenile adjudication, as it was set forth in the indictment. Here, Hand's prior adjudication did not determine the offense charged as R.C. 2901.08(A) contemplates, and the prior adjudication was not set forth in the indictment providing notice of the mandatory prison term. Furthermore, no jury determination was available to Hand for the aggravating circumstance that resulted in a mandatory prison term.[5] Significantly, *Adkins* was decided before the U.S. Supreme Court decided *Alleyne*, which expanded the reasoning of *Apprendi* to mandatory minimum terms.

{¶ 27} In my view, equating *Hand's* juvenile adjudication with an adult conviction ignores the fact that Ohio has developed a system for juveniles that assumes that children are not as culpable for their acts as adults. Compared to adults, juveniles evince a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. "A juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.' *Thompson* [*v. Oklahoma,* 487 U.S. 815] at 835, 108 S.Ct. 2687, [101 L.Ed.2d 702 (1988)] (plurality opinion)." *Graham v. Florida*, 560 U.S. 48, 68, 130 S.Ct. 2011, 2026, 176

---

[5] Furthermore, *Adkins'* focus was on the retroactivity and Ex Post Facto implications of R.C. 2901.08(A). There was no discussion of the unavailability of jury trials in juvenile court nor the impact of *Apprendi* and its progeny on the constitutionality of the legislative enhancement provisions, particularly those which are not set forth in the indictment, providing notice consistent with Due Process.

L.Ed.2d 825 (2010).

**{¶ 28}** From a moral perspective, in my view, it is misguided to equate the failings of a minor with those of an adult. Although Hand was sentenced as an adult, the majority view prohibits the trial judge from considering his "youthfulness" at the time of his predicate offense. These facts, coupled with the failure to set forth the adjudication in the indictment and the lack of jury trial in juvenile court, in my view, constitute a Due Process violation under the United States and Ohio Constitutions. Clearly, one reason *Apprendi* exempts prior convictions from its rule is the opportunity for an initial jury determination of guilt and notice through the wording of the indictment of the predicate offense. *McKeiver* did not address nor contemplate these issues at all since it was decided long before *Apprendi* and *Allenye*.

**{¶ 29}** I would reverse and remand for re-sentencing.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Andrew T. French
Robert Alan Brenner
Hon. Dennis J. Langer