64 Cal.Rptr.3d 878 (2007)
154 Cal.App.4th 735
The PEOPLE, Plaintiff and Respondent,
v.
Vincent TU, Defendant and Appellant.
No. A105905.
Court of Appeal of California, First District, Division Four.
August 27, 2007.
*879 First District Appellate Project, Matthew Zwerling, William Richard Such, for Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Stan Helfman, Supervising Deputy Attorney General, Margo J. Yu, Deputy Attorney General, for Respondent.
REARDON, J.
This matter comes to us on remand from the United States Supreme Court, following grant of certiorari and vacation of the judgment, for our "further consideration in light of Cunningham v. California [ (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham) ]." In his supplemental brief on remand, appellant Vincent Tu urges that his Sixth Amendment rights as expounded in Apprendi v. Neiv Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 *880 L.Ed.2d 435 (Apprendi), Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely) and Cunnningham, supra, 549 U.S. ___, 127 S.Ct. 856 were violated. This is so, he insists, because the trial court imposed an upper term sentence based on (1) several nonrecidivist factors which should have been submitted to a jury but erroneously were not; and (2) his record of prior sustained juvenile petitions, reliance upon which is subject to "considerable doubt."
We conclude that under Apprendi and our Supreme Court's recent decision in People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (Black II), reliance on this latter factor sufficed to empower the trial court to impose the upper term and consider other relevant factors which were not decided by the jury. Accordingly, imposition of the upper term sentence did not violate appellant's Sixth Amendment rights and we affirm the judgment.

I. BACKGROUND
Appellant Vincent Tu entered a negotiated disposition in February 2002, pursuant to which he pleaded guilty to voluntary manslaughter and attempted second degree murder and admitted related personal use of firearm allegations for each count. As well he pleaded guilty to conspiracy to obstruct justice, and agreed to additional terms. Later appellant moved unsuccessfully to withdraw his plea. On March 3, 2004, the trial court entered sentence, as follows: (1) an upper 11-year term for voluntary manslaughter; (2) a consecutive upper 10-year term for the related personal use of a firearm allegation; (3) a consecutive two-year four-month term (one-third of middle) for attempted murder; (4) a consecutive one-year four-month term (one-third of middle) for the related firearm allegation; and (5) a consecutive eight-month term (one-third of middle) for the conspiracy to obstruct justice count. His total sentence was 25 years four months. (People v. Tu (Nov. 29, 2005, A105905), 2005 WL 3164620 [nonpub. opn.].)
At the sentencing hearing, the trial court articulated several aggravating factors to support the upper term on count 1, as follows: (1) the crime involved great violence and disclosed a high degree of callousness (Cal. Rules of Court,[1] rule 4.421(a)(1)); (2) appellant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); (3) appellant had prior sustained petitions in juvenile court (rule 4.421(b)(2)); and (4) appellant was armed with and used a weapon at the time of committing the offense (rule 4.421(a)(2)). With respect to the juvenile petitions, the record shows sustained adjudications for accessory to robbery, felony burglary and misdemeanor burglary.
The court conducted a second hearing a week later to augment the sentencing record. At that time it made the additional finding that appellant "was uncooperative with the district attorney's office with respect to the investigations that he committed himself to cooperate with and for that additional reason, ... I am selecting the term of 25 years, four months."
On appeal to this court, appellant assert* ed, among other matters, that the trial court impermissibly imposed upper terms and consecutive sentences based on facts not found by the jury or admitted by him, in violation of Blakely. We concluded that this argument lacked merit because in People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Black I), our Supreme Court held "that the judicial factfinding that occurs when a judge exercises *881 discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (Black I, at p. 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534; People v. Tu, supra, A105905.)
Thereafter appellant petitioned the California Supreme Court for review. That court denied the petition without prejudice to any relief to which he might be entitled after the United States Supreme Court determined in Cunningham the effect of Blakely on California law. Appellant appealed to the United States Supreme Court and, as stated above, that court vacated judgment and remanded to us for additional consideration in light of Cunningham. Supplemental briefs followed.

II. Discussion

A. Legal Background

1. Relevant United States Supreme Court Rulings

A series of United States Supreme Court opinions sets the stage for this remand.
We begin with Almendarez-Torres v. United States (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (Almendarez-Torres) in which the Supreme Court construed a federal statute that prescribed a sentence of no more than two years for an illegal immigration offense, but allowed a maximum sentence of 20 years if the defendant had suffered certain prior convictions. (Id. at pp. 227-229, 118 S.Ct. 1219.) Needless to say, the defendant received a sentence well in excess of two years. (Id. at p. 227, 118 S.Ct. 1219.) Of note, the defendant had admitted his recidivism at the time of pleading guilty and did not assert subsidiary standard of proof claims with respect to sentencing. (Id. at pp. 247-248, 118 S.Ct. 1219.) The court rejected the defendant's theory that the prior conviction allegation was an element of the offense that must be stated in the indictment and proven by the government to a jury beyond a reasonable doubt. (Id. at p. 239, 118 S.Ct. 1219.) Further, it emphasized that recidivism has traditionally served as a basis for increasing an offender's sentence, the factor goes to punishment only and does not relate to the commission of the underlying crime. (Id. at pp. 243-244, 118 S.Ct. 1219.)
The next term the court clarified the scope of the Almendarez-Torres opinion, explaining that it "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." (Jones v. United States (1999) 526 U.S. 227, 248, 119 S.Ct. 1215, 143 L.Ed.2d 311 (Jones).) Further, the court emphasized that the holding of Almendarez-Torres "rested in substantial part on the tradition of regarding recidivism as a sentencing factor." (Jones, at p. 249, 119 S.Ct. 1215.) This emphasis in turn suggested a "possible constitutional distinctiveness" because "unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (Ibid.)
The following year the court confirmed that due process as well as the Sixth Amendment notice and jury trial guarantees mandate that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi, supra, 530 *882 U.S. at pp. 476-477, 490, 120 S.Ct. 2348.) At issue in Apprendi was the application of a hate-crime statute providing for an extended term of imprisonment in cases where the trial judge found, by a preponderance of the evidence, that the defendant acted with a purpose to intimidate the victim based on the victim's particular characteristics. (Id. at pp. 468-469, 120 S.Ct. 2348.) This challenged procedure was "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." (Id. at p. 497,120 S.Ct. 2348.)
Citing Jones, the Apprendi court characterized the Almendarez-Torres opinion as representing "at best an exceptional departure" to the general rule that penalty-enhancing findings must be determined by a jury beyond a reasonable doubt. (Apprendi supra, 530 U.S. at p. 487, 120 S.Ct. 2348.) In addition, it emphasized that because Almendarez-Torres "had admitted the three earlier convictions for aggravated feloniesall of which had been entered pursuant to proceedings with substantial procedural safeguards of their ownno question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the [c]ourt." (Id. at p. 488, 120 S.Ct. 2348.) Further, the conclusion in that case "turned heavily upon the fact that the additional sentence to which the defendant was subject was `the prior commission of a serious crime.' [Citations.] Both the certainty that procedural safeguards attached to any `fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that `fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a `fact' increasing punishment beyond the maximum statutory range." (Apprendi at p. 488, 120 S.Ct. 2348.) And finally, distinguishing prior convictions from other factors relied on by judges to enhance sentences, the court explained: "[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." (Id. at p. 496,120 S.Ct. 2348.)
In Blakely, supra, 542 U.S. at page 303, 124 S.Ct. 2531, the United States Supreme Court defined the relevant "statutory maximum" for Apprendi purposes as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Thus, "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." (Id. at pp. 303-304, 124 S.Ct. 2531.)
Finally, earlier this year in Cunningham, supra, 549 U.S. ___, 127 S.Ct. 856, the United States Supreme Court overruled Black I and struck down the upper term sentencing provisions of our determinate sentencing law (DSL): "Factfinding to elevate a sentence from 12 to 16 years,[2] our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the *883 preponderance of the evidence lies. [¶] ... Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment.... [¶] ... Contrary to the Black court's holding, our decisions from Apprendi to Booker point to the middle term specified in California's statutes, not the upper term, as the relevant statutory
maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." (Id. at pp. 870-871, 127 S.Ct. 856.)

2. Black II

Our Supreme Court just handed down its opinion in Black II, on remand from the United States Supreme Court for reconsideration in light of Cunningham. There, the court held that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury. ... [¶] ... Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. [Citation.] Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in Blakely. the defendant is not `legally entitled' to the middle term sentence, and the upper term sentence is the `statutory maximum.'" (Black II, supra, 41 Cal.4th at p. 813, 62 Cal.Rptr.3d at p. 579, 161 P.3d at p. 1140.) Thus, the issue in each case, including the present case, "is whether the trial court's fact finding increased the sentence that otherwise could have been imposed, not whether it raised the sentence above that which otherwise would have been imposed." (Id. at p. 815, 62 Cal.Rptr.3d 569, 161 P.3d 1130.) Concluding, the Black court stated: "[imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (Id. at p. 816, 62 Cal.Rptr.3d 569, 161 P.3d 1130.)
With respect to rule 4.421(b)(2), which specifies as an aggravating circumstance that "defendant's prior convictions ... are numerous or of increasing seriousness," the Black court indicated that three prior convictions are considered numerous. Moreover, a defendant does not have a right to a jury trial on whether such convictions are numerous or increasingly serious. (Black II, supra, 41 Cal.4th at pp. 818-819, 62 Cal.Rptr.3d at p. 584, 161 P.3d at p. 1145.)

3. Ninth Circuit Perspectives on Juvenile Adjudications

In United States v. Tighe (9th Cir.2001) 266 F.3d 1187, 1188 (Tighe), the Ninth Circuit tackled the legality of a defendant's sentence under a federal statute which (1) ratchets up the sentence for anyone convicted of being a felon in possession of a firearm if the offender suffered three violent felonies or serious drug offenses, and (2) permits certain juvenile adjudications to count as predicate convictions. Scrutinizing the Jones and Apprendi decisions, the Ninth Circuit concluded that "the `prior conviction' exception to Apprendi's general rule must be limited to prior convictions *884 that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within Apprendi's `prior conviction' exception." (Tighe, at p. 1194.) The dissent took exception with the majority's reading of Jones, supra, 526 U.S. at page 249, 119 S.Ct. 1215 (quoted above), exclaiming it amounted to a "quantum leap" in logic, and concluding that where the underlying juvenile adjudication is constitutionally sound in light of the rights afforded in the juvenile proceeding, the subsequent reliance on that adjudication to increase an adult offender's sentence poses no constitutional dilemma. (Tighe, at p. 1200 [dis. opn. of Brunetti, J.].)

4. California Perspectives on Juvenile Adjudications

The upper term sentencing scheme of the DSL, which the Cunningham court invalidated, required the trial court to weigh aggravating and mitigating circumstances and called for establishing such circumstances by a preponderance of the evidence. (Pen.Code, § 1170, subd. (b); rule 4.420(b)[3].) The scheme authorized the trial court to impose an upper term sentence if, upon considering all relevant facts, the aggravating circumstances outweighed those in mitigation. (Ibid.) Circumstances in aggravation include the fact that defendant's prior "sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." (Rule 4.421(b)(2).)
The parties do not cite any case authority, nor have we located any published opinion, squarely addressing whether a trial court's reliance on a sustained juvenile petition as an aggravating factor under the DSL braves constitutional challenge under the Almendarez-Torres/Apprendi prior conviction exception. However, historically California courts have condoned as constitutional the use of juvenile adjudications as prior convictions under the three strikes law. (See People v. Fowler (1999) 72 Cal.App.4th 581, 585-587, 84 Cal. Rptr.2d 874 [pre-Apprendi]; People v. Bowden (2002) 102 Cal.App.4th 387, 391-394, 125 Cal.Rptr.2d 513; People v. Smith (2003) 110 Cal.App.4th 1072, 1075-1080, 1 Cal.Rptr.3d 901; People v. Lee (2003) 111 Cal.App.4th 1310, 4 Cal.Rptr.3d 642; People v. Superior Court (Andrades) (2003) 113 Cal.App.4th 817, 830-834, 7 Cal. Rptr.3d 74; People v. Buchanan (2006) 143 Cal.App.4th 139, 149, 49 Cal.Rptr.3d 137; see also People v. Palmer (2006) 142 Cal.App.4th 724, 47 Cal.Rptr.3d 864 [upholding use of out-of-state misdemeanor drunk driving convictions, for which there was no jury trial right, to enhance punishment for current California drunk driving offense].) Of course, in the context of the three strikes law, a defendant has the right to have a jury decide whether he or she suffered a prior conviction, including certain juvenile adjudications statutorily, defined as prior convictions. (Pen.Code, §§ 1025, subd. (b), 667, subd. (d)(3), 1170.12, subd. (b)(3).)
Declining to follow the above line of cases, recently a divided Sixth District panel ruled that under Apprendi, a prior juvenile adjudication cannot be used as a strike to increase the maximum sentence *885 for a criminal offense. (People v. Nguyen (2007) 152 Cal.App.4th 1205, 62 Cal. Rptr.3d 255 [petn. for review pending, petn. filed July 31, 2007].) The majority concluded that post-Apprendi, there is no constitutional basis for using juvenile adjudications as strikes to enhance an adult sentence. (Id. at pp. 1226, 1239, 62 Cal. Rptr.3d 255.) The court stressed: "Whenever the length of a sentence imposed on an adult offender is involved, the case is by definition criminal, and it implicates the Sixth Amendment's right to a jury trial. When the [t]hree [s]trikes law uses the fact of a prior juvenile adjudication to enhance a sentence, it is doing so for the purpose of enhancing an adult defendant's sentence, and it is bound by the rules that govern criminal cases. One of those rules is that a criminal sentence must reflect the judgment of a jury of at least six members, even if it is a prior conviction, unless that jury is waived. By letting a juvenile adjudication `stand in' for `evidence of past criminal conduct' the law is relying on the judgment of a fact finder that is constitutionally unacceptable in a criminal case in the absence of the defendant's waiver."[4] (Id. at p. 1233, 62 Cal.Rptr.3d 255.)
The dissent did not view the absence of jury factfinding at the juvenile court level to be of constitutional concern. First, it rejected any Sixth Amendment violation because "judicial factfinding in juvenile court does not offend the United States Constitution and is sufficiently reliable for juvenile court purposes." (People v. Nguyen, supra, 152 Cal.App.4th at p. 1241, 62 Cal.Rptr.3d 255.) Next, it rejected any due process concern because "[t]he [d]ue [p]rocess [c]lause is violated only if the procedure `"offends some principle of justice so rooted in the traditions of our people as to be ranked as fundamental"` [citation]" and the absence of a jury trial in juvenile court offends no such principle. (Id. at p. 1243, 62 Cal.Rptr.3d 255)

B. Waiver

As a preliminary matter we address the People's contention that appellant has forfeited his present claim of error. They reason that at the time of sentencing, Black I had not been decided but Blakely and Apprendi had, and nevertheless appellant has not claimed that he objected under Blakely or Apprendi when the trial court imposed sentence. First, Blakely was decided after, not before, appellant was sentenced. Thus, the key definition of "statutory maximum" for Apprendi purposes had not yet been formulated. Second, as the Black II court has explained, it is Blakely that "`worked a sea change in the body of sentencing law.' [Citation.] The circumstance that some attorneys may have had the foresight *886 to raise [an Apprendi jury trial] issue does not mean that competent and knowledgeable counsel reasonably would have been expected to have anticipated the high court's decision in Blakely. We conclude that ... with respect to sentencing proceedings similar to the one here at issue, preceding the Blakely decision, a claim of sentencing error premised upon the principles established in Blakely and Cunningham is not forfeited on appeal by counsel's failure to object at trial." (Black II, supra, 41 Cal.4th at p. 799, 62 Cal.Rptr.3d at 578, 161 P.3d at 1139.)

C. Analysis

Appellant maintains that the trial court could not appropriately rely on any of the factors used to sentence him to the upper term, and from the record it cannot be ascertained whether or not a jury would find them true beyond a reasonable doubt. The People urge that the Almendarez-Torres/Apprendi recidivism exception applies to this case, the particular factor being that appellant had prior sustained juvenile petitions. They reason that because the recidivism factor gave the trial court authority to impose the upper term, it could thereafter, properly, find other aggravating factors in deciding whether to impose the upper term.
The People's position was squarely adopted by the Black II court with respect to adult prior convictions. We are convinced that prior juvenile adjudications are encompassed within the Almendarez-Torres/Apprendi prior conviction/recidivism exception. Thus, since the trial court could rely solely on appellant's juvenile record to impose the upper term, its reliance on additional sentencing factors was not error.

1. Sufficient Procedural Safeguards

While the Apprendi court expressed some discomfort with the prior conviction exception, it found reassurance in "the certainty that procedural safeguards attached to any `fact' of prior conviction." (Apprendi supra, 530 U.S. at p. 488, 120 S.Ct. 2348.) In United States v. Smalley (8th Cir.2002) 294 F.3d 1030, the reviewing court shed additional light on Apprendi's treatment of the prior conviction exception: "[W]hile the [c]ourt established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the [c]ourt did not take a position on possibilities that lie in between these two poles." (Id. at p. 1032.) The court concluded that "juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." (Id. at p. 1033.) The court reasoned that juvenile defendants have the right to notice, to counsel, to confront and cross-examine witnesses, and the privilege against self-incrimination. Additionally, guilt must be established beyond a reasonable doubt. These safeguards were "more than sufficient to ensure the reliability that Apprendi requires." (Ibid.) Similarly, the dissent in Tighe expressed the view that although the Jones court associated the validity of the prior conviction exception with the procedural protections of notice, reasonable doubt and right to a jury trial (Jones, supra, 526 U.S. at p. 249, 119 S.Ct. 1215), the particular language employed did not excise juvenile adjudications from the exception: "[T]he language in Jones stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the *887 predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending Jones' logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no constitutional problem (on which Apprendi focused) in using that adjudication to support a later sentencing enhancement." (Tighe, supra, 266 F.3d at p. 1200 [dis. opn. of Brunetti, J.].)
We find the reasoning in Smalley and the Tighe dissent compelling. The panoply of rights and protections extended to juveniles in this state infuse sufficient reliability into the juvenile adjudicative process to satisfy Apprendi and Jones. To begin with, "[p]roof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced" to adjudicate a minor a ward of the court. (Welf. & InstCode,[5] §§ 602, 701.) And, in addition to the rights enumerated by the court in Smalley, like an adult charged with a crime, juveniles are also afforded protection against double jeopardy. (In re Gault (1967) 387 U.S. 1, 10, 87 S.Ct. 1428, 18 L.Ed.2d 527; People v. Fowler, supra, 72 Cal.App.4th at p. 585, 84 Cal.Rptr.2d 874.) Most of these rights are enumerated by statute. (See § 658 [notice]; § 679 [presence at hearing]; § 700 [explanation of allegations and rights]; § 664 [subpoena power]; § 702.5 [privilege against self-incrimination and rights of confrontation and cross-examination]; § 800, subds. (a) & (d) [appellate review and right to free transcript where appellant cannot afford counsel].) Wrapped in all these protections, juvenile adjudications can serve as sentence enhancers despite the absence of the right to a jury trial.

2. Other Factors

Other considerations bolster our conclusion that juvenile adjudications constitutionally count as prior convictions for purposes of enhancing an adult sentence. First, like adult convictions, juvenile adjudications are relevant to the issue of recidivism. Moreover, to be used as a DSL sentence enhancer under the California rules, the adjudications must be numerous or of increasing seriousness, thereby providing increased probative value to the issue of recidivism.
Recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (Almendarez-Torres, supra, 523 U.S. at p. 243, 118 S.Ct. 1219.) As aptly summarized by the Kansas Supreme Court in State v. Hitt (2002) 273 Kan. 224, 236, 42 P.3d 732: "Apprendi created an exception allowing the use of a prior conviction to increase a defendant's sentence, based on the historical role of recidivism in the sentencing decision and on the procedural safeguards attached to a prior conviction. Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the Apprendi exception for prior convictions encompasses juvenile adjudications."
Second, although there is no federal or state constitutional right to a jury trial in juvenile proceedings (McKeiver v. Pennsylvania (1971) 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647; People v. Superior Court (Carl W.) (1975) 15 Cal.3d 271, 274, 124 Cal.Rptr. 47, 539 P.2d 807), the underlying rehabilitative purpose of the juvenile system "is sufficiently distinct" from the adult criminal justice system to support *888 adjudication of juvenile offenses without a jury trial. (In re Charles C. (1991) 232 Cal.App.3d 952, 960-961, 284 Cal.Rptr. 4.) Of note are the numerous reasons identified by the McKeiver court in support of its conclusion that trial by jury in the juvenile court's adjudicative function is not constitutionally required. For example, the court expressed concern that imposing a jury trial requirement might convert the proceeding into a fully adversary process that would "put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding." (McKeiver, at p. 545, 91 S.Ct. 1976.) As well, imposing a jury trial on the juvenile court system would not greatly strengthen the factfinding function, if at all. On the other hand, such a requirement would diminish the system's ability to function in a unique manner and would impede states' ability to experiment with new and different ways to resolve juvenile delinquency problems. (Id. at p. 547, 91 S.Ct. 1976.) Further, with the injection of the jury trial into the juvenile system would come "the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." (Id. at p. 550, 91 S.Ct. 1976.) Additionally, equating juvenile court adjudication with a criminal trial overlooks the aspects of fairness, concern, sympathy, and paternal attention contemplated by the juvenile justice system. (Ibid.) The reasoning set forth in McKeiver remains compelling and pertinent today.
Third, the fact of a prior juvenile adjudication is an objective fact, readily accessed through routine criminal recordkeeping systems. Significantly, prior to sentencing, a defendant has the opportunity to dispute such fact. Penal Code section 1170, subdivision (b) and rule 4.437 permit either party to submit a statement in aggravation or mitigation prior to sentencing. That statement must include "[n]otice of intention to dispute facts or offer evidence in aggravation or mitigation at the sentencing hearing...." (Rule 4.437(c)(2).)

III. Conclusion
For all these reasons we conclude that since a juvenile court can constitutionally and reliably adjudicate a delinquency matter without affording the minor a jury trial, there is no constitutional impediment to the subsequent use of the juvenile adjudication for purposes of enhancing an adult offender's sentence. The trial court had constitutional permission to rely on appellant's juvenile criminal history. With that permission it properly considered a host of additional factors in imposing the upper term. There being no error, the judgment is affirmed.
We concur: RUVOLO, P.J, and SEPULVEDA, J.
NOTES
[1] All references to rules are to the California Rules of Court.
[2] The middle term sentence for Cunningham's crime was 12 years; the upper term, 16 years. (Cunningham, supra, 549 U.S. at p. ___, 127 S.Ct. at pp. 860-861.)
[3] Our Legislature recently amended the DSL, effective March 30, 2007. (Sen. Bill No. 40 (Stats.2007) ch. 3.). References to Penal Code section 1170 in this paragraph are to the law as it read prior to those amendments. As well, the Judicial Council has amended the sentencing rules effective May 23, 2007. Reference to rule 4.420(b) in this paragraph is to the rule as it read prior to those amendments.
[4] Notwithstanding that unlike the DSL, the three strikes law requires pleading and proof of juvenile adjudications used as strikes, and gives the accused a right to a jury trial on the question of whether he or she in fact suffered that prior adjudication, the Nguyen court was of the opinion that the right to prove the underlying contested facts to a jury was fundamental if the adjudication were to serve as a sentence enhancer in adult proceedings: "[T]here is a vast difference between proving to a jury that the defendant once suffered a juvenile adjudication, and proving to a jury, from contested facts, that the defendant actually committed the criminal conduct underlying the juvenile adjudication of delinquency that makes him a recidivist." (People v. Nguyen, supra, 152 Cal.App.4th at p. 1237, 62 Cal.Rptr.3d 255.) Moreover, although defendant admitted the facts underlying the juvenile adjudication, the court emphasized that he did not do so with full knowledge that he could have insisted on a jury trial, because there was no right to one. Thus, the jury trial did not fulfill its constitutional role as "the `circuitbreaker in the State's machinery of justice.'" (Id. at p. 1222, 62 Cal.Rptr.3d 255 quoting Blakely, supra, 542 U.S. at p. 306, 124 S.Ct. 2531.)
[5] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.