[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1061 
OPINION
Appellant Freddie J. Grayson appeals a judgment by which he was convicted of robbery (count 1) and attempted robbery (count 2), and *Page 1062 
sentenced to five years eight months in state prison. The sole contention on appeal is that the trial court erred by imposing the upper term sentence based on aggravating factors not found to be true by the jury nor admitted by appellant. We affirm.
 FACTUAL AND PROCEDURAL BACKGROUND On August 18, 2005, appellant was charged by information with (1) second degree robbery of Maria Mercado (count 1), (2) attempted second degree robbery of Anastacia Managbanag (count 2), (3) second degree robbery of Gale Lara (count 3), and (4) receiving stolen property (count 4). The information further alleged that Mercado was over 65 years old, and that appellant knew or reasonably should have known that fact. The charges and allegation stemmed from events occurring in Hayward on September 5 and 8, 2004.
 In the early morning of September 5, 2004, Anastacia Managbanag and her husband, Bernabe, were walking on Oliver Street towards a nearby bus stop. As the Managbanags approached a driveway leading to their condominium, appellant, driving a white Toyota pickup truck, drove past and stopped just in front of them. As the Managbanags then turned onto Tennyson Street from Oliver Street, appellant attempted to steal Anastacia's purse from behind. A struggle ensued, during which Anastacia fell to the ground still holding her purse, and Bernabe shouted at appellant that he recognized him. Eventually, appellant let go of the purse and ran away. Anastacia suffered a bruised shoulder and hit her head on the cement.
 On September 8, 2004, around 11:00 a.m., Maria Mercado was waiting for the bus on the corner of Oliver and Tennyson Streets. Approaching from behind, appellant grabbed Mercado's purse. After a struggle, appellant took the purse and escaped over a wall to a condominium complex. Appellant then drove off in a Toyota pickup truck, passing though the grass and sidewalk of the condominium complex. Mercado suffered a bruised forearm.
 The police ultimately located the Toyota pickup truck, inside of which they found a purse, a coin purse, some loose currency and a necklace. Mercado identified those items as hers, and police matched two fingerprints found on the truck to appellant. About an hour later, police saw appellant walking with his girlfriend. Appellant fled, but police were able to detain his girlfriend. Soon after, police caught and arrested appellant. During a police interview the next day, appellant waived his rights and admitted complicity in the robbery of Mercado and attempted robbery of Managbanag.
 A jury trial began May 9, 2006. On May 18, 2006, the jury found appellant guilty of the offenses of second degree robbery of Mercado (count 1) and *Page 1063 
attempted second degree robbery of Managbanag (count 2), but deadlocked on the offenses of second degree robbery of Gale Lara (count 3) and receiving stolen property (count 4). The jury further found untrue the allegation that Mercado was over 65 years of age, and that appellant knew or reasonably should have known that fact.
 The trial court declared a mistrial as to counts 3 and 4, and thereafter granted the People's motion to dismiss those charges. And, on July 13, 2006, the trial court sentenced appellant to state prison for five years eight months, calculated based on the upper term of five years for count 1 and one-third the middle term for count 3, to run consecutively. This appeal followed.
 DISCUSSION The sole issue on appeal relates to the propriety of appellant's five-year-eight-month sentence. Appellant challenges his sentence on the ground that the trial court lacked authority to impose the upper term based on aggravating factors neither found true by the jury nor admitted by him. Relying on Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (Blakely) and Cunningham v. California
(2007) 549 U.S. ___ [166 L.Ed.2d 856, 127 S.Ct. 856] (Cunningham), appellant argues the trial court's imposition of the upper term violated his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process.
 In Blakely, the United States Supreme Court held that a criminal defendant's Sixth Amendment right to a jury trial was violated where the trial court, applying Washington's Sentencing Reform Act of 1981 (Wash. Rev. Code, § 9.94A.010 et seq.), imposed a sentence greater than the standard statutory range based upon facts not proven to a jury beyond a reasonable doubt nor admitted by the defendant. (Blakely, supra,542 U.S. at p. 300.)
 The following year, the California Supreme Court examined this state's determinate sentencing law (DSL) in light of Blakely, and concluded it did not run afoul of the Sixth Amendment. (People v. Black (2005)35 Cal.4th 1238, 1244 [29 Cal.Rptr.3d 740, 113 P.3d 534] (Black I).) Specifically, our state's high court held that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence . . . under California law does not implicate a defendant'sSixth Amendment right to a jury trial." (Ibid., italics added.)
 In Cunningham, however, the United States Supreme Court expressly disapproved of Black I, holding that "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a *Page 1064 
preponderance of the evidence." (Cunningham, supra, 549 U.S. at p. [127 S.Ct. at pp. 863-864], italics added.) As such, "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our SixthAmendment precedent."[1] (549 U.S. at pp. ___-___ [127 S.Ct. at pp. 868-871], italics added.)
 I. As an initial matter, we must address whether appellant has waived the right to bring this challenge.[2] Admittedly, appellant failed to object below to imposition of the upper term on federal constitutional grounds. Appellant argues, however, that such an objection would have been futile given the state of California law at the time of his sentencing. We agree.
 The California Supreme Court recently addressed a nearly identical futility argument, and concluded it had merit. Reconsidering Black I on remand in light of Cunningham, the California Supreme Court decidedPeople v. Black (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (Black II), in which it set forth the well-established rule that "although challenges to procedures or to the admission of evidence normally are forfeited unless timely raised in the trial court, `this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change.' [Citation.]" (Black II, supra, 41 Cal.4th at p. 810.) There, as here, the defendant failed to object to imposition of the upper term sentence on Sixth Amendment grounds. (41 Cal.App.4th at p. 810.) However, when the defendant was sentenced, neither Blakely nor Cunningham had been decided. (Ibid.) As such, "no California case supported the proposition that [United States Supreme Court precedent] required a jury trial on aggravating circumstances, which, under the DSL, were to be decided by the judge." (Id. at p. 811.) The California Supreme Court thus concluded the lack of authority precluded a finding that a defendant had forfeited a claim of sentencing error premised on the principles established inBlakely and Cunningham by not objecting at trial. (Black II, supra, at p. 812.) *Page 1065 
 We find the California Supreme Court's reasoning in Black II equally applicable here. Appellant was sentenced in July 2006, after Blakely was decided in 2004 but before Cunningham was decided in 2007. As such, BlackI set forth the applicable law at the time, holding in no uncertain terms that, under California's DSL, a trial court's imposition of the upper term based on aggravating circumstances established without a jury trial was constitutionally permissible under the Sixth Amendment. (Black I,supra, 35 Cal.4th at p. 1244.) We thus conclude it would be unreasonable to expect appellant's trial counsel to have objected to the trial court's imposition of the upper term sentence without a jury trial in anticipation of the United States Supreme Court's subsequent disapproval of Black I in Cunningham. Accordingly, we turn to the merits of appellant's claim.
 II. As has already been set forth above, appellant contends the trial court lacked authority under the Sixth and Fourteenth Amendments to impose the upper term sentence "based on its own findings of aggravating facts neither found true by a jury nor admitted by appellant." The record reveals the trial court relied upon three such aggravating facts: (1) the victims were particularly vulnerable given "their age and their size . . . and their gender" (Cal. Rules of Court, former rule 4.421(a)(3)); (2) the crimes indicated planning, sophistication and a common method (rule 4.421(a)(8)); and (3) appellant had numerous prior juvenile adjudications of increasing seriousness (rule 4.421(b)(2)). The trial court noted in mitigation that appellant had voluntarily acknowledged wrongdoing in the early stages of the criminal process (Cal. Rules of Court, former rule 4.423(b)(3)), but concluded such factor did not outweigh the aggravating factors (Pen. Code, former § 1170, subd. (b)), rendering imposition of the upper term appropriate.
 In challenging the trial court's decision, appellant acknowledges a well-established exception to the requirement that a jury find beyond a reasonable doubt any fact exposing the defendant to a greater potential sentence. "[T]he right to a jury trial does not apply to the fact of a prior conviction. (Cunningham, supra, ___ U.S. at p. ___ [127 S.Ct. at p. 868]; Blakely, supra, 542 U.S. at p. 301; Apprendi [v.New Jersey (2000)] 530 U.S. [466,] 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] [Apprendi]; Almendarez-Torres v. United States (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (Almendarez-Torres).)" (Black II, supra,41 Cal.4th at p. 818.) The reason for the so-calledApprendi/Almendares-Torres exception is that "`[r]ecidivism . . . is a traditional, if not the most traditional, basis for *Page 1066 
a sentencing court's increasing an offender's sentence.' (Almendarez-Torres, supra, 523 U.S. at p. 243.)"[3] (Black II, supra, at p. 818.)
 Applying this Supreme Court precedent here, the parties disagree on whether the trial court's use of appellant's prior juvenile adjudications in imposing the upper term sentence was sufficient to render his sentence constitutionally permissible. Appellant suggests two reasons why it was not. First, appellant suggests that, because California law requires the sentencing court to balance aggravating and mitigating facts, "it would not be enough even if there were a single valid aggravating factor." Second, appellant argues, a prior juvenile adjudication is not "a prior conviction" within the meaning of Apprendi or its progeny, and thus remains subject to the Sixth Amendment right to a jury trial, which right he was not afforded. We examine each contention below.
 III. The California Supreme Court's decision in Black II, which issued after the close of briefing in this case, quickly disposes of appellant's first contention. There, the court held that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (Black II,supra, 41 Cal.4th at p. 816, italics added.) "The court's factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term. No *Page 1067 
matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed. Accordingly, judicial factfinding on those additional aggravating circumstances is not unconstitutional." (Id. at p. 815.)
 Given this clear guidance, we reject appellant's suggestion that more than one legally sufficient aggravating fact was required to justify the trial court's sentencing decision. We are thus left with the issue of whether the aggravating fact of appellant's prior juvenile adjudications is sufficient to render imposition of the upper term constitutionally permissible under Apprendi and its progeny. On this issue, appellate courts in California and elsewhere remain divided.
 IV. A minority of courts in California and elsewhere have determined juvenile adjudications may not be properly characterized as prior convictions for purposes of the Apprendi/Almendares-Torres exception. Such courts have generally reasoned that juvenile adjudications do not afford the juvenile a right to a jury trial. (E.g., People v. Nguyen
(2007) 152 Cal.App.4th 1205, 1236 [62 Cal.Rptr.3d 255] (Nguyen);U.S. v. Tighe (9th Cir. 2001) 266 F.3d 1187, 1193-1194 (Tighe).) For example, our colleagues in the Sixth Appellate District recently held in a divided opinion that "using a juvenile adjudication [pursuant to the Three Strikes law] to enhance the sentence in a criminal case is a constitutionally impermissible use of a nonjury judgment to prove the fact of recidivism under Apprendi." (Nguyen, supra,152 Cal.App.4th at p. 1236.) The Nguyen court further held such use of the juvenile adjudication remains constitutionally impermissible underApprendi "whether [the defendant] was adjudicated a juvenile offender after a contested hearing or pursuant to an admission." (Id. at p. 1239.) The court reasoned that "there is a vast difference between proving to a jury that the defendant once suffered a juvenile adjudication, and proving to a jury, from contested facts, that the defendant actuallycommitted the criminal conduct underlying the juvenile adjudication of delinquency that makes him a recidivist." (Id. at p. 1237; see alsoTighe, supra, 266 F.3d at pp. 1193-1194 [holding that juvenile adjudications that do not afford a right to a jury trial or require proof beyond a reasonable doubt do not fall within Apprendi's "prior conviction" exception].)
 A majority of courts to have considered this issue, however, including every California appellate court besides the Sixth Appellate District inNguyen and every federal appellate court besides the Ninth Circuit inTighe, has rejected this reasoning. These courts have generally reasoned that, even without a jury trial, a juvenile adjudication has sufficient procedural safeguards — including the right to notice (Welf. Inst. Code, § 658), to counsel *Page 1068 
(id., § 679), and to confront and cross-examine witnesses (id., § 702.5), and the privilege against self-incrimination (ibid.) — to permit a trial court to use it to enhance a sentence without violating the defendant's constitutional rights.[4] (E.g., People v. Tu (2007)154 Cal.App.4th 735 [64 Cal.Rptr.3d 878]; People v. Fowler, supra,72 Cal.App.4th at p. 585; People v. Buchanan (2006)143 Cal.App.4th 139, 149 [49 Cal.Rptr.3d 137]; People v. Palmer
(2006) 142 Cal.App.4th 724, 733 [47 Cal.Rptr.3d 864]; People v.Bowden (2002) 102 Cal.App.4th 387, 393-394 [125 Cal.Rptr.2d 513];People v. Superior Court (Andrades) (2003) 113 Cal.App.4th 817, 830-831
[7 Cal.Rptr.3d 74]; People v. Lee (2003) 111 Cal.App.4th 1310,1314-1316 [4 Cal.Rptr.3d 642]; People v. Smith (2003)110 Cal.App.4th 1072, 1079 [1 Cal.Rptr.3d 901]; U.S. v. Smalley (8th Cir. 2002) 294 F.3d 1030, 1032; U.S. v. Jones (3d Cir. 2003) 332 F.3d 688,696; U.S. v. Burge (11th Cir. 2005) 407 F.3d 1183, 1190.)[5] Given these procedural safeguards, one judge has thus concluded, "when a juvenile receives all the process constitutionally due at the juvenile stage, there is no constitutional problem (on which Apprendi focused) in using that adjudication to support a later sentencing enhancement." (Tighe, supra, 266 F.3d at p. 1200 (dis. opn. of Brunetti, J.); see alsoNguyen, supra, 152 Cal.App.4th at p. 1240 (dis. opn. of Mihara, J.) ["[s]ince the federal constitutional right to a jury trial is not violated in either the juvenile or adult proceedings, it is impossible to assert a violation of that right as the basis for a prohibition on the use of a juvenile adjudication as a prior conviction"].)
 Further, the recent Tu decision by our colleagues in Division Four of this appellate district sets forth three additional considerations that "bolster [the] conclusion that juvenile adjudications constitutionally count as prior convictions for purposes of enhancing an adult sentence." (People v. Tu, supra, 154 Cal.App.4th at p. 749.) "First, like adult convictions, juvenile adjudications are relevant to the issue of recidivism. Moreover, to be used as a DSL sentence enhancer under the California rules, the adjudications must be numerous or of increasing seriousness, thereby providing increased probative value to the issue of recidivism." (Ibid.)
 Second, even without the right to a jury trial, "the underlying rehabilitative purpose of the juvenile system `is sufficiently distinct' from the adult criminal justice system to support adjudication of juvenile offenses without a jury trial. [Citation.]" (People v. Tu,supra, 154 Cal.App.4th at p. 750.) In particular, as *Page 1069 
the United States Supreme Court noted in McKeiver v. Pennsylvania (1971)403 U.S. 528, 545 [29 L.Ed.2d 647, 91 S.Ct. 1976], the lack of a jury trial in juvenile adjudications serves several purposes, including promoting an intimate, informal and flexible proceeding and limiting delay and antagonism. (Tu, supra, 154 Cal.App.4th at p. 749.)
 And, finally, "the fact of a prior juvenile adjudication is an objective fact, readily accessed through routine criminal recordkeeping systems." (People v. Tu, supra, 154 Cal.App.4th at p. 750.) In fact, prior to sentencing in a criminal proceeding, a defendant has a right, guaranteed by statute, to challenge any aggravating fact alleged by the prosecution, including the alleged fact of a prior juvenile adjudication. (Ibid.; Pen. Code, former § 1170, subd. (b); Cal. Rules of Court, former rule 4.437(c)(2) [permitting defendant to submit a statement in mitigation, which must include "[n]otice of intention to dispute facts or offer evidence in aggravation or mitigation at the sentencing hearing"].)
 We find persuasive these considerations set forth in the majority case law. Given that juvenile adjudications are fully consistent with constitutional principles and sufficiently reliable for juvenile court purposes, even in the absence of the right to a jury trial, we see no reason to preclude their use by trial courts in enhancing criminal defendants' sentences. As such, we conclude that the single aggravating fact of a prior juvenile adjudication that has been established in accordance with constitutional and statutory requirements is sufficient to authorize a trial court to impose the upper term sentence. (Cf. BlackII, supra, 41 Cal.4th at pp. 812, 815.) Further, once this fact has been properly established, the trial court may then properly consider the existence of additional aggravating facts in deciding whether to actually impose the upper term sentence. (Ibid.)
 V. We are left with one remaining question — whether the trial court had authority to impose the upper term based on the evidence in this record
of appellant's prior juvenile adjudications. "On appellate review, a trial court's reasons for its sentencing choice are upheld if `supported by available, appropriate, relevant evidence.' [Citation.]" (Black II,supra, 41 Cal.4th at p. 818, fn. 7.)
 Here, as appellant points out, no certified records of sustained juvenile petitions in his name were offered into evidence. Rather, the trial court apparently relied upon statements in the presentence probation report in finding the aggravating fact of appellant's prior juvenile adjudications. Appellant contends such evidence was insufficient as a matter of law to prove the fact of his prior juvenile adjudications. We disagree. *Page 1070 
 Again, the California Supreme Court's recent decision in Black II is helpful. There, the court expressly rejected the nearly identical argument that "evidence of [defendant's] prior convictions consisted only of hearsay statements, contained in the probation report, which are insufficient as a matter of law to prove the prior convictions beyond a reasonable doubt." (Black II, supra, 41 Cal.4th at p. 820, fn. 9.) Presuming the trial court applied a preponderance of the evidence standard of proof in considering such evidence, the Black II court further rejected the argument that the federal Constitution requires prior convictions to be established beyond a reasonable doubt: "Defendant does not cite any case affirmatively supporting his contention that the federal Constitution requires prior convictions to be proved beyond a reasonable doubt even if a jury trial is not required. The United States Supreme Court has stated the rule and the Almendarez-Torres exception as follows: `Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (Apprendi, supra, 530 U.S. at p. 490.) The high court never has suggested that the requirement of proof beyond a reasonable doubt could be severed from the right to jury trial for purposes of applying the foregoing rule or its exception. (See, e.g., U.S. v. Salazar-Gonzalez (9th Cir. 2006)458 F.3d 851, 859 [`[T]he fact of a prior conviction may be found by a district court using a preponderance of the evidence standard']; U.S. v.Barrero (2d Cir. 2005) 425 F.3d 154, 157 [`[I]t is well established that a court may find the fact of a prior conviction by a preponderance of the evidence'].)" (Black II, supra, 41 Cal.4th at p. 820, fn. 9.)
 The Black II court thus held "[the trial court's] conclusion that defendant's prior convictions were numerous or of increasing seriousness is supported by the probation report, whose recitation of defendant's criminal history was not challenged by defendant in the trial court." (Black II, supra, 41 Cal.4th at p. 818, fn. 7.) As such, the court concluded, the defendant's criminal history established an aggravating circumstance that independently satisfied the federal constitutional requirements and rendered him eligible for the upper term sentence. (Id.
at p. 820.)
 We draw the same conclusion here. As in Black II, appellant did not exercise his right before the sentencing hearing to challenge the evidence in the probation report of his prior juvenile adjudications, although he knew or should have known the trial court would rely on the report in deciding his sentence. (Pen. Code, former § 1170, subd. (b); Cal. Rules of Court, former rule 4.437(c)(2); Black II, supra,41 Cal.4th at p. 818, fn. 7 ["[t]he trial court is presumed to have read and considered the probation report"].) Moreover, appellant suggests no reason why we should deem the probation report unreliable or untrustworthy. As such, we conclude the trial court properly *Page 1071 
found true and relied upon the aggravating fact of his prior juvenile adjudications in imposing the upper term sentence.
 DISPOSITION
The judgment is affirmed.
Pollak, Acting P. J., and Siggins, J., concurred.
[1] In response to Cunningham, the California Legislature recently amended the DSL, Penal Code section 1170, effective March 30, 2007. (Stats. 2007, ch. 3.) References here to Penal Code section 1170 are to the statute as it read prior to amendment. In response to the Legislature's amendment of the DSL, the Judicial Council amended the sentencing rules effective May 23, 2007. References here to the California Rules of Court are to the rules as they read prior to amendment.
[2]The People withdrew its waiver argument at oral argument. We nonetheless briefly address it here in light of recent legal developments on the issue, which we discuss in more detail below.
[3] Apprendi followed two earlier decisions in which the high court also examined the imposition of a sentence more severe than the statutory maximum for an offense: Almendarez-Torres v. United States, supra,523 U.S. 224, and Jones v. United States (1999) 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311]. In Almendarez-Torres, the Supreme Court emphasized that recidivism — i.e., the prior commission of a serious crime — "is a traditional, if not the most traditional basis for a sentencing court's increasing an offender's sentence." (523 U.S. at p. 243.) Thus, consistent with that tradition, the Supreme Court there held that the fact of a prior conviction need not be stated in a felony indictment in order to be used later to increase the maximum penalty. (Id. at p. 235.) One year later, in Jones, the Supreme Court observed that recidivism might be "distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing," because "unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (526 U.S. at p. 249.) Harmonizing these earlier decisions, the Supreme Court in Apprendi
clarified that recidivism should be treated as "a narrow exception to the general rule" that, under the Sixth Amendment, a criminal defendant is entitled to a jury trial on questions affecting the length of his or her sentence. (Apprendi v. New Jersey, supra, 530 U.S. at p. 490 (Apprendi).)
[4]In addition to these generally accepted rights, in California, a juvenile's guilt must be established beyond a reasonable doubt, and the juvenile is afforded protection against double jeopardy. (Welf. Inst. Code, §§ 602, 701; People v. Fowler (1999) 72 Cal.App.4th 581, 585
[84 Cal.Rptr.2d 874].)
[5]Most of the reported California decisions, including Nguyen, which have addressed the constitutionality of using prior juvenile adjudications to enhance prison sentences have done so in the context of the "Three Strikes" law rather than, as here, in the context of the upper term sentencing scheme of the DSL. *Page 1072